IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

| | | |
|---|---|---|
| RODNEY A. EDMUNDSON, | ) | Cause No. CV 07-125-M-DWM-JCL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY; ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

_____

On October 18, 2007, Petitioner Rodney Edmundson filed this action seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Edmundson is a state prisoner proceeding pro se.

**I. Preliminary Screening**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Id. If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order." Id.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

**II. Background**

On February 11, 2005, in Montana's Eleventh Judicial District Court, Flathead County, Edmundson was charged with attempted sexual intercourse without consent, aggravated kidnaping, four counts of felony assault with a weapon, and one count of violating privacy in communications. The State filed a notice that it intended to seek a sentencing enhancement against him as a persistent felony offender.  Later, the State filed an Amended Information, dropping the charges of aggravated kidnaping and attempted sexual intercourse without consent and adding a misdemeanor charge of sexual assault.  See Appellant Br. at 1-2 (doc. 1-13); Pet. (doc. 1) at 2-3, ¶¶ 1-8.

On July 27, 2005, Edmundson executed a document titled "Acknowledgment of Rights and Plea Agreement."  He endorsed provisions stating that he was not "acting under the influence of alcohol, drugs, or prescription medicine" and that he understood "this agreement is limited to the Flathead County Attorney's Office and cannot bind other state, local, or federal prosecuting authorities."  Acknowledgment at ¶¶ 7, 19 (doc. 1-11).  On the same day, he pled guilty under oath in open court to one count of felony assault with a weapon.  The State agreed to dismiss all the other charges and to recommend a sentence of ten years, with five suspended.  See Change of Plea Tr. (doc. 6-2) at 25:7-21.   The trial court, the Honorable Stewart E. Stadler, specifically asked Edmundson whether there were any "drugs or alcohol in your system," and Edmundson responded "No, sir."  Id. at 28:20-21.  Edmundson admitted that at some time and date between January 30 and February 11, 2005, he pointed a gun at another person, causing her reasonable apprehension of serious bodily injury.  Id. at 29:12-24.

On October 6, 2005, a sentencing hearing was held.  The trial court noted that "when we

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

review your criminal history it is rather amazing," id. at 41:3-4, but explained that it understood many charges and warrants were listed twice in the presentence report. All of the duplicates were excised, and the court declared that they would make no difference in its decision regarding the sentence. Id. at 37:23-39:12. The trial court accepted the plea agreement and sentenced Edmundson to the recommended ten-year commitment to the custody of the Department of Corrections, with five years suspended. As to Edmundson's placement by the Department, the trial court said:

> With regards to your request for placement at Connections Corrections, I can tell you for assault with a weapon and your criminal history that's not going to happen, they would not place you there. They don't allow placement of people convicted of crimes of violence, which would be assault with a weapon.

Id. at 41:13-19. The court concluded:

> Okay. And you certainly don't need to commit new offenses, because I think you're getting the benefit of a bargain in this case, and I think it has more to do with the State's case and the people that were involved in this than anything else. There's going to come a time that people are just going to say whatever's the maximum that's what we're going to give him, understand that?

Id. at 43:10-18. Edmundson responded, "Yes, sir." Id. at 43:19. The written judgment was filed on October 20, 2005. See Appellant's Br. at 2.

On November 18, 2005, Edmundson wrote a letter to the trial court, complaining that the Department of Corrections had placed him at Montana State Prison and contending that placement there, rather than in a community corrections facility, violated the plea agreement. The trial court did not respond. See Respondent Br. (doc. 6-3) at 9.

On April 25, 2006, Edmundson, acting pro se, moved in the trial court to withdraw his guilty plea. In an affidavit accompanying the motion, Edmundson stated that, between March 2005 and October 10, 2005, "the county's physician" prescribed narcotics and pain medication, specifically,

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

Trapadol and Norflex, 50 milligrams each, administered three times a day.  He averred that he was not guilty of felony assault with a weapon, was unaware of his surroundings at the time he changed his plea, could not articulate his involvement in the crime except to say "yes" and "no" at his attorney's direction, did not understand the elements of the crime, and became aware of what transpired at the hearing only by reviewing the transcript.  See Edmundson Aff. (doc. 1-9) at 1-2; see also Mot. to Withdraw Guilty Plea (doc. 1-8) at 4.  The trial court denied the motion, reasoning that Edmundson had waited too long to file it, received a substantial benefit from the State's dismissal of the other charges, and failed to show that the medication he was taking prevented him from entering an intelligent and voluntary plea.  See Appellant Br. at 3.

On or about May 26, 2006, Edmundson filed a document titled "Notice of Appeal and Brief in Support."  He raised for the first time allegations that his counsel "fabricated information," "lied to me from the beginning," and "misled with false promises," and he claimed that there was a conflict of interest between himself and his counsel because Edmundson complained to Judge Stadler, filed a complaint with the Office of Disciplinary Counsel, and "finally" attempted to terminate counsel's representation when counsel filed a motion for the appointment of co-counsel on July 12, 2005.  See Notice of Appeal and Br. in Supp. (doc. 1-10) at 4-5.  He also discussed his motion to withdraw his guilty plea and his previous claim that the State breached the plea agreement by placing him at Montana State Prison, id. at 1-4, and he asserted, for the first time, that the trial court denied his right to allocution at sentencing, id. at 4 (reverse side).

At some point, counsel was appointed to represent Edmundson on appeal.  Counsel argued that Edmundson was entitled to a hearing on his motion to withdraw his guilty plea and that the other

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

issues raised in the Notice of Appeal should be "treated as postconviction matters." Appellant Br. at 3. On August 28, 2007, the Montana Supreme Court affirmed the trial court, noting that "to the extent the issue regarding whether to hold a hearing was one of judicial discretion, there clearly was not an abuse of discretion." Order ¶ 5, State v. Edmundson, No. DA 06-0426 (Mont. Aug. 28, 2007).[1]

On September 18, 2007, Edmundson filed a petition for postconviction relief in the trial court and an affidavit in support. See Pet. for Postconviction Relief and Affidavit (docs. 1-4, 1-5). On September 26, 2007, the trial court dismissed the petition as untimely. See Order (doc. 1-2). On or about November 2, 2007, Edmundson filed a Notice of Appeal. Edmundson twice moved for the appointment of counsel, and the Montana Supreme Court twice denied counsel. See Order (doc. 7-6) at 1.

On September 21, 2007, Edmundson moved in the trial court to vacate the restitution portion of the judgment. Although Edmundson did not submit a copy of the trial court's decision, presumably the trial court denied the motion. See, e.g., State's Resp. to Mot. to Vacate (doc. 7-11) at 1.

On October 18, 2007, Edmundson filed his petition in this Court.

The records of the Montana Supreme Court show that, in February 2008, Edmundson voluntarily dismissed his appeal of the trial court's denial of postconviction relief.

### III. Edmundson's Allegations

Edmundson contends, first, that he was under the influence of prescription medication when

---

[1] Edmundson failed to provide a copy of the Montana Supreme Court's Order with the many other state court documents he filed. It is available at http://fnweb1.isd.doa.state.mt.us/idmws/custom/SLL/SLL_FN_home.htm.

he entered his guilty plea and that he should have received a hearing in the trial court "to see if these [prescriptions] affected my impairment and coherence at the time of change of plea and sentencing." Pet. at 4, ¶ 15A.

Second, Edmundson claims that the State breached the plea agreement when the probation officer who compiled the presentence report, "in concert with the Deputy Prosecutor," recommended that he be placed at Montana State Prison, "when the plea agreement 'specifically' stipulated that the 'State shall make no recommendation concerning placement [by] the Department of Corrections." Id. at 4, 6, ¶ 15B.

Third, Edmundson contends that he received ineffective assistance of counsel because counsel "fabricated information, blatantly lied, and purposely misled Petitioner with false promises if and when he signed the plea agreement." He also claims that counsel had a conflict of interest because Edmundson complained about him to the trial court and to the Office of Disciplinary Counsel. Id. at 5 (insert page).

Finally, on January 15, 2008, Edmundson moved the Court to consider an "additional claim." The motion was granted, pursuant to Fed. R. Civ. P. 15(a). It is not clear whether Edmundson considers the "additional" claim to be his contention that he was deprived of needed legal assistance in state court, see Mot. to Consider Additional Claim at 1, or whether he meant for the Court to consider his claim that the restitution portion of the judgment is invalid. The latter is suggested by the fact that he submitted with his "Motion to Consider" copies of documents he filed in state court on the restitution issue.

**IV. Analysis**

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

Although some or all of Edmundson's claims may be barred on procedural grounds, such as procedural default or the federal statute of limitations, it is clear that he is not entitled to relief on the merits of his claims.  Accordingly, it is more efficient to proceed to the merits.  See, e.g., 28 U.S.C. § 2254(b)(2).

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Edmundson may obtain relief if the state court's denial of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the state court's denial was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

A state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [its] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court's decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407.  In sum, a federal court sitting in habeas must be convinced that the state court's decision is "more than incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  The state court's decision must be "objectively unreasonable." Id.  Where the highest state court does not explain its reasoning, the federal court looks to the reasoning of the court below. See Ylst v. Nunnemaker, 501 U.S. 797,

801 (1991).

"When 'the requirement set forth in § 2254(d)(1) is satisfied, a federal court must then resolve the constitutional claim without the deference AEDPA otherwise requires.'" <u>Frantz v. Hazey</u>, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) (quoting <u>Panetti v. Quarterman</u>, __ U.S. __, 127 S. Ct. 2842, 2858 (2007)) (internal brackets omitted). In other words, even if he succeeds in showing that the state court's decision was objectively unreasonable, Edmundson must go on to show that his federal constitutional rights were violated. Federal habeas jurisdiction lies only for petitioners who allege that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

**A. Voluntariness of the Guilty Plea**

This claim was decided on the merits by the Montana Supreme Court.[2] To obtain relief in this Court, Edmundson must first show that the Montana Supreme Court's decision was objectively unreasonable.

A criminal defendant's guilty plea may be accepted only if there is "an affirmative showing that it was intelligent and voluntary." <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969). "Presuming waiver from a silent record is impermissible." <u>Id.</u> (quoting <u>Carnley v. Cochran</u>, 369 U.S. 506, 516 (1962)). A defendant must also be competent to enter a plea. The standard is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him."

---

[2] The Montana Supreme Court's test for withdrawing a guilty plea relies on federal law. <u>See, e.g.</u> <u>State v. Warclub</u>, 114 P.3d 254, 257-58 ¶¶ 17-19 (Mont. 2005) (discussing, <i>inter alia</i>, <u>Brady v. United States</u>, 397 U.S. 742 (1970)).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

Godinez v. Moran, 509 U.S. 389, 396 (1993) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)) (internal quotation marks omitted); see also id. at 399 (competency standard for pleading guilty is the same as for standing trial). "A competency determination is necessary only when a court has reason to doubt the defendant's competence." Id. at 401 n.13. Perfect mental acuity is not required.

In Brady v. United States, 397 U.S. 742 (1970), the United States Supreme Court held, based on "[t]he record before us," that a plea was intelligently made where "there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties." Id. at 756. In Machibroda v. United States, 368 U.S. 487 (1962), the Supreme Court held that an evidentiary hearing was required where a petitioner's allegations were not "vague or conclusory" and "related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light." Id. at 494-95 (parentheses omitted).

In Blackledge v. Allison, 431 U.S. 63 (1977), the Court again required further proceedings to investigate a petitioner's allegation that he pled guilty in exchange for a promise of a particular sentence. There was no transcript of the change of plea hearing or the sentencing, and the only evidence of the defendant's acknowledgment and waiver of his rights was a preprinted form. Under those circumstances, the Court required more, though it pointed out that discovery, rather than a full-blown evidentiary hearing, might suffice. The Court also explained:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a change of plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

Blackledge, 431 U.S. at 73-74.

In essence, then, the question is whether Edmundson presented the trial court with a reason to doubt his competency. The transcript of the change of plea hearing constitutes an affirmative showing that Edmundson's guilty plea was intelligent and voluntary. The trial court did not presume competency from a silent record. It specifically asked Edmundson whether he was under the influence of alcohol or drugs. Edmundson said he was not. Edmundson also endorsed a provision in the Acknowledgment of Rights stating that he was not "acting under the influence of alcohol, drugs, or prescription medicine." In addition, the trial court noted that nothing before it "established that the prescription medication Edmundson allegedly took prevented him from pleading knowingly, voluntarily, and intelligently." Order at ¶ 2, Edmundson, No. 06-0426. Neither the record nor Edmundson's new allegations suggest that the trial court had a reason to question Edmundson's competency to enter a guilty plea.

The Montana Supreme Court decided that the trial court did not abuse its discretion by failing to hold an evidentiary hearing. This conclusion was not objectively unreasonable. Edmundson's responses to the trial court's questions – in all three of his arraignments, at the change of plea hearing, and at his sentencing – were entirely appropriate. He was able to assist his attorney in deciphering his extensive criminal record. In fact, he interjected unsolicited, uncoached information in the middle of his sentencing on October 6, 2005 – four days before he says he stopped taking the medication. See Sentencing Tr. (doc. 6-2) at 34:17-23; Aff. (doc. 1-9) at 1, ¶ 3. Edmundson submitted nothing to support his claim that the prescription medication he was taking was capable of causing the effects he alleged.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

"[C]learly established Federal law, as determined by the Supreme Court of the United States," does not hold that a state court must hold an evidentiary hearing if a defendant who pled guilty alleges, contrary to the record and with only his own affidavit as support, that prescription medication prevented him from knowing what he was doing when he entered his plea. Collateral attack "was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence.'" Calderon v. United States Dist. Court (Nicolaus), 98 F.3d 1102, 1106 (9th Cir. 1996) (quoting Aubut v. Maine, 431 F.2d 688, 689 (1st Cir. 1970)). Edmundson's claim cannot meet the stringent requirements of 28 U.S.C. § 2254(d). It should be denied.

**B. Terms of the Plea Agreement**

The probation and parole officer's recommendation to place Edmundson at Montana State Prison did not breach the plea agreement. The prosecution made no recommendation. Cf. State v. Leitheiser, 133 P.3d 185, 189 ¶ 21 (Mont. 2006).

**C. Ineffective Assistance of Trial Counsel**

Edmundson claims that his attorney "fabricated information, blatantly lied, and purposely misled Petitioner with false promises if and when he signed the plea agreement." He does not say what information was fabricated, what lies were told, what false promises were made, how they affected him, or in what manner he was misled. The allegations are vague and conclusory. If counsel had actually promised Edmundson something that he did not get, or if counsel misled him in some way, the Court has no doubt that Edmundson would have said long ago exactly what did or did not happen.

Edmundson also claims that counsel had a conflict of interest because of Edmundson's

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

complaints about him to the trial court and to the Office of Disciplinary Counsel.  In Mickens v. Taylor, 535 U.S. 162 (2002), the United States Supreme Court explained that a prisoner seeking habeas relief on Sixth Amendment grounds must show that any alleged conflict of interest "actually affected the adequacy of [the defendant's] representation."  Mickens, 535 U.S. at 168 (describing the holding of Cuyler v. Sullivan, 446 U.S. 335, 346-48 (1980)).  Edmundson fails to allege any facts showing that any aspect of his counsel's representation was inadequate.

All of Edmundson's claims of ineffective assistance should be denied on the merits.

**D. "Additional Claim"**

As explained above, it is not altogether clear what the "additional claim" is.  However, both are meritless.

There is no federal right to the assistance of counsel in a state postconviction proceeding.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987).  Federal habeas relief is not available to challenge restitution because restitution is not custody, nor is it linked to custody under the circumstances of this case.  See, e.g., Dremann v. Francis, 828 F.2d 6, 7 (9th Cir. 1987) (per curiam); Virsnieks v. Smith, __ F.3d __, __, 2008 WL 867757 *8 (7th Cir. Apr. 2, 2008); Obado v. New Jersey, 328 F.3d 716, 718 (3d Cir. 2003).

**V. Certificate of Appealability**

**A. Governing Law**

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 12

The standard of a "substantial showing" can be satisfied on an issue-by-issue basis.  Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner . . . "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").  Thus, a petitioner may obtain a COA even if he does not establish that he will prevail on the merits.  The COA inquiry seeks only to prevent frivolous appeals from wasting judicial resources, while still affording petitioners an opportunity to show potential for merit.  Lambright, 220 F.3d at 1025.  Any doubt as to whether a petitioner has met the standard is resolved in his favor.  Id.  The COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should not issue."  Fed. R. App. P. 22(b)(1).

**B. Discussion**

Edmundson's strongest claim alleges that he should have had an evidentiary hearing in state court "to see if" prescription medications – which he did not say he was taking at the time he changed his plea – "affected my impairment and coherence at the time of change of plea and sentencing."  Pet. at 4, ¶ 15A.  The phrasing itself is telling.  In addition, the transcripts of Edmundson's three arraignments, change of plea hearing, and sentencing show that he was not merely responding at his counsel's direction, as he now alleges.  The Montana courts did not make an objectively unreasonable decision in denying an evidentiary hearing.  This claim fails to meet the stringent requirements of 28

U.S.C. § 2254(d).

Edmundson's other claims are frivolous. A prosecutor does not breach a plea agreement when a probation officer makes a sentencing recommendation. Edmundson says his attorney lied to him but fails to say what lies were told. The conflict-of-interest claim is not accompanied by any showing that the purported conflict actually affected the adequacy of his representation. Finally, federal law does not require the appointment of counsel in state postconviction proceedings, and 28 U.S.C. § 2254(a) does not authorize a federal court to alter or vacate restitution that is not linked to custody.

Edmundson fails to make a substantial showing of the denial of any constitutional right. While his claim regarding his guilty plea is not as weak as the others, it still fails to make a showing substantial enough to meet the standards of 28 U.S.C. § 2254(d). A COA should be denied.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

Edmundson's Petition (doc. 1) should be DENIED on the merits. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Edmundson may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 14

the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

Edmundson must immediately file a Notice of Change of Address if his mailing address changes. Failure to do so may result in dismissal of this action without notice to him.

DATED this 1st day of May, 2008.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 15